UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MARQUISSE DAVON PARKS,

                Petitioner,

v.

MICHAEL BURGESS,

                Respondent.

_____/

Case No. 1:22-cv-823

Honorable Paul L. Maloney

## **<u>OPINION</u>**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

<u>Discussion</u>

## I.    Factual Allegations

Petitioner Marquisse Davon Parks is incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. On April 25, 2019, following a four-day jury trial in the Kent County Circuit Court, Petitioner was convicted of one count of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, and one count of second-degree criminal sexual conduct (CSC-II), in violation of Mich. Comp. Laws § 750.520c. On July 31, 2019, the court entered Petitioner's final judgment of sentence. The court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of 35 to 105 years for CSC-I, and 25 to 75 years for CSC-II.

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> The victim accused defendant, her biological father, of touching her vaginal area with his hand and penetrating her vagina with his penis every day after school or "many times." The victim was unable to specify a time frame, but she claimed the abuse started when she was five or six years old. The victim disclosed to her mother in March 2018 that defendant had inappropriately touched her, and her mother reported the allegation to the Grandville Police Department the same day. The department scheduled a forensic interview for the victim at the Children's Advocacy Center, and Officer Alex Niesen interviewed defendant before asking him to leave the home.

> The day after the victim's disclosure, she attended the forensic interview, which was conducted by Amy Minton. After the interview, the victim went to the YWCA for an examination performed by Diane Decatur, a sexual assault nurse examiner (SANE). Shortly thereafter, the prosecution charged defendant. After the preliminary hearing, Minton forensically interviewed the victim a second time because she had made an additional disclosure to her mother.

> At trial, the prosecution presented testimony from the victim, her mother, Officer Niesen, Decatur, and Minton. KP, defendant's biological son, and KP's brother, CR, also testified at trial because they temporarily lived with defendant and saw the victim regularly coming out of defendant's bedroom when they arrived

2

home from school. They both recalled once seeing the victim leave defendant's bedroom with the buckle of her pants undone. The prosecution also called Thomas Cottrell, the chief programming officer at YWCA West Central Michigan, to testify as an expert regarding child sexual abuse, child sexual abuse victims, and sex offenders. In addition, the prosecution admitted other-acts evidence regarding several alleged incidents of sexual abuse that occurred between defendant and his stepdaughter, AJ, and two alleged incidents of sexual abuse that occurred between defendant and his biological daughter, JT. Defense counsel had JT's mother and Officer DJ Verhage testify regarding JT's allegations against defendant. Andrew Measaell also testified at trial that he took over the case from Officer Niesen and that the victim's mother told him that no damages or tears were found on the victim. Additionally, he testified that no male DNA or pubic hair was recovered from the victim. The jury found defendant guilty on both counts, and the trial court sentenced him as described above.

*People v. Parks*, Nos. 349362, 350305, 2021 WL 3700115, at *1 (Mich. Ct. App. Aug. 19, 2021) (footnotes omitted).

Petitioner, with the assistance of counsel, directly appealed his convictions to the Michigan Court of Appeals, raising the same three issues he raises in his habeas petition. By opinion issued August 19, 2021, the court of appeals affirmed the trial court. Petitioner, again with the assistance of counsel, then filed an application for leave to appeal to the Michigan Supreme Court, raising the same three issues. By order entered April 5, 2022, the supreme court denied leave to appeal. *People v. Parks*, 971 N.W.2d 647 (Mich. 2022).

On September 1, 2022, Petitioner timely filed his habeas corpus petition raising three grounds for relief, as follows:

I.     Mr. Parks was denied his due process right to a fair trial by the presentation of expert testimony which impermissibly bolstered the witnesses' credibility. Alternatively, trial counsel was ineffective for failing to object to the testimony.

II.    Mr. Parks' constitutional right to due process was violated when the trial court erroneously allowed repeated hearsay testimony about [the victim's] disclosures. The error was plain. Alternatively, trial counsel was ineffective for failing to object.

III.   The trial court violated Mr. Parks' due process rights by allowing the prosecutor to introduce unfairly prejudicial other-acts evidence.

(Pet., ECF No. 1, PageID.5–8.)

## II.     AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in

4

light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

All three of Petitioner's primary habeas issues claim that his trial was rendered unfair by improperly admitted evidence. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction . . . [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id*. at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 68. "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our

people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)); *see also Wilson v. Sheldon*, 874 F.3d 470, 475–76 (6th Cir. 2017). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Petitioner turns to a slightly different standard to assess whether the admission of evidence violates due process. Petitioner suggests that the appropriate standard is that set forth by the Sixth Circuit in *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000): "Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." (Pet'r's Br., ECF No. 2, PageID.26) (quoting *Brown*, 227 F.3d at 645, internal quotes omitted in Pet'r's Br.).

Although circuit authority supports that formulation of the standard, the federal law clearly established by the Supreme Court does not. Accordingly, the Court will consider whether the admission of evidence resulted in a due process violation based on the standard derived from *Egelhoff*, 517 U.S. at 43,[1] as quoted in *Seymour*, 224 F.3d at 552, rather than the standard from *Brown*, 227 F.3d at 645.

---

[1] The standard from *Egelhoff* was certainly not novel. In *Dowling v. United States*, 493 U.S. 342 (1990), the Court explained:

> Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. We, therefore, have defined the category of infractions that violate "fundamental fairness" very narrowly. As we observed in Lovasco, supra, at 790, 97 S.Ct., at 2048;
>
> "Judges are not free, in defining 'due process,' to impose on law enforcement officials [their] 'personal and private notions' of fairness and to 'disregard the limits that bind judges in their judicial function.' *Rochin v. California*, 342 U.S. 165, 170, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952) . . . . [They] are to determine only whether the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 341, 79 L.Ed. 791 (1935), and which define 'the

Ultimately, whether the process Petitioner was due is considered under the "principle of justice . . . ranked as fundamental" or under the materiality standard of "crucial, critical highly significant factor" is immaterial because, to establish that the state court's admission of the evidence is contrary to clearly established federal law, Petitioner must demonstrate even more. Under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000) (quoting *Williams*, 529 U.S. at 412–13). Petitioner has not met this difficult standard.

## A.      Expert Testimony Regarding Witness Credibility

Petitioner complains that the trial court improperly admitted expert opinion testimony from two witnesses. Petitioner claims that the conclusion of sexual assault nurse examiner Decatur, that there was "possible pediatric sexual abuse," and the testimony of the YWCA chief programming officer regarding whether certain behaviors of the victim were, or were not, "red flags," constituted impermissible expert opinion testimony regarding the credibility of the victim.

Regarding Decatur's testimony, the court of appeals acknowledged the bounds of permissible expert testimony:

> [T]he Michigan Supreme Court has repeatedly held that "an examining physician cannot give an opinion on whether a complainant had been sexually assaulted if the conclusion [is] nothing more than the doctor's opinion that the victim had told the truth." *People v Thorpe*, 504 Mich 230, 255; 934 NW2d 693 (2019) (quotation marks and citation omitted; alteration in original). See also

---

community's sense of fair play and decency,' *Rochin v. California, supra*, at 173, 72 S.Ct., at 210."

*Dowling*, at 352–53; *see also Patterson v. New York*, 432 U.S. 197, 201–02 (1977).

> *People v Smith*, 425 Mich 98, 109; 387 NW2d 814 (1986). When a medical professional's opinion is based "solely on what the victim had told him," the opinion testimony is objectionable. *Id*. See also *Thorpe*, 504 Mich at 255. The testimony is objectionable because it lacks a "reliable foundation," and jurors are just as qualified to evaluate the victim's testimony. *Smith*, 425 Mich at 109. However, "an examining physician, if qualified by experience and training relative to treatment of sexual assault complainants, can opine with respect to whether a complainant had been sexually assaulted when the opinion is based on physical findings and the complainant's medical history." *Thorpe*, 504 Mich at 255.

*Parks*, 2021 WL 3700115, at *2. The court then reviewed Decatur's testimony, determined it was

"based on both the victim's disclosure and a physical abrasion on the victim's genital area," and

concluded that the expert testimony was permissible under state law. *Id*. at *2–3.

With regard to expert Cottrell's testimony, on the other hand, the Michigan Court of

Appeals agreed with Petitioner, in part, that the testimony was problematic:

> In this case, a portion of Cottrell's testimony was improper. Although Cottrell was properly permitted to "testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim," he crossed the line at one point by testifying regarding "the consistencies between the behavior of the particular victim and other" child sexual abuse victims before the victim's credibility was attacked. *Peterson*, 450 Mich at 352.

*Parks*, 2021 WL 3700115, at *6. Although Petitioner challenged several aspects of the YWCA

officer's testimony, the appellate court was only troubled by one thing: "the only improper

testimony that defendant challenged was Cottrell's testimony affirming that it was normal that the

victim in this case made a delayed disclosure." *Id*. at *7. The court of appeals concluded further,

however, that the admission of that evidence was harmless. The court identified several instances

of corroborating testimony that took Petitioner's situation out of the realm of "a true credibility

contest" where the expert's testimony might require reversal under state law. *Id*.

The court of appeals' determination with respect to the testimony of both experts was not

based on the United States Constitution; rather, it was based on the admissibility of the evidence

under state law. The state court specifically relied on the Michigan Supreme Court's opinion in *People v. Thorpe*, 934 N.W.2d 693 (Mich. 2019), regarding testimony from Cottrell. *Parks*, 2021 WL 3700115, at *6.[2] And *Thorpe* specifically addressed the defendant's "nonconstitutional claim that Cottrell's expert testimony should not have been admitted." *Thorpe*, 934 N.W.2d at 705.

The state court's determination that the evidence was admissible as a matter of state law is binding on this Court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). As the Supreme Court explained in *Estelle,* "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." 502 U.S. at 67–68. Accordingly, at least as a matter of state law, it was not error for the trial court to admit the opinion testimony challenged by Petitioner.

Nonetheless, it is still conceivable that evidence that is determined to be admissible under state law might still so infect the entire trial with unfairness that the resulting conviction violates due process. *See, e.g., Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). At that point, however, Petitioner must show that the state court's admission of the evidence was in conflict with a decision reached by the Supreme Court on a question of law or that the state court decided the evidentiary

---

[2] Although the court of appeals relied principally on *Thorpe*, it cited other decisions: *People v. Smith*, 387 N.W.2d 814 (Mich. 1986); *People v. Del Cid*, 953 N.W.2d 532 (Mich. Ct. App. 2020); *People v. Peterson*, 537 N.W.2d 857 (Mich. 1995); *People v. Douglas*, 852 N.W.2d 587 (Mich. 2014); and *People v. Dobek*, 732 N.W.2d 546 (Mich. Ct. App. 2007). In each of those cases, as in *Thorpe*, the Michigan appellate court focused on the principle that the admission of opinion testimony relating to the credibility of a witness was not helpful to the jury—jurors could decide the credibility issue on their own without opinion testimony from other witnesses—and, thus, opinion evidence was not permissible under the Michigan Rules of Evidence.

issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders*, 221 F.3d at 860. He has not and cannot.

The lower federal courts offer a wealth of authority supporting the proposition that opinion testimony regarding the credibility of other witnesses is inappropriate. *See, e.g., United States v. Hill*, 749 F.3d 1250 (10th Cir. 2014) (collecting federal circuit court authority); *Esch v. Cnty. of Kent*, 699 F. App'x 509, 517 (6th Cir. 2017) (citing *Hill*); *Greenwell v. Boatwright*, 184 F.3d 492, 495–97 (6th Cir. 1999) (stating, with regard to the expert's testimony "as to the validity of statements made by other witnesses . . . we agree with the plaintiffs that the expert statements were inadmissible opinion testimony . . . ."). But there is no Supreme Court authority stating that proposition. *Hill*, 749 F.3d at 1258 (relying on "the 'weight of authority from other circuits'. . . [in the] absen[ce of] a holding from . . . the Supreme Court").

Moreover, the fundamental premise of the lower court authority—that expert testimony regarding witness credibility is inappropriate *because it invades the province of the jury*[3]—has

---

[3] That is also the premise of the state law limitation on such evidence. Michigan law holds that a witness may not provide an opinion on the credibility of another witness:

> It is "[t]he Anglo-Saxon tradition of criminal justice ... [that] makes jurors the judges of the credibility of testimony offered by witnesses." *United States v. Bailey*, 444 U.S. 394, 414, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). Because it is the province of the jury to determine whether "a particular witness spoke the truth or fabricated a cock-and-bull story," *id*. at 414-415, 100 S.Ct. 624, it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial. *People v. Buckey*, 424 Mich. 1, 17, 378 N.W.2d 432 (1985). See also, *People v. Peterson*, 450 Mich. 349, 352, 537 N.W.2d 857 (1995). Such comments have no probative value, *Buckey*, 424 Mich. at 17, 378 N.W.2d 432, because "they do nothing to assist the jury in assessing witness credibility in its fact-finding mission and in determining the ultimate issue of guilt or innocence." *Connecticut v. Taft*, 306 Conn. 749, 764, 51 A.3d 988 (2012) (citation and quotation marks omitted). See also, *People v. Row*, 135 Mich. 505, 507, 98 N.W. 13 (1904) (explaining that opinion testimony regarding a complainant's veracity is not competent evidence). As a result, such statements are considered "superfluous" and are "inadmissible lay witness [ ] opinion on the believability of a [witness's] story" because the jury is "in just as good a position

been called into question by the Supreme Court. Interpreting the Federal Rules of Evidence, the Supreme Court in *United States v. Johnson*, 319 U.S. 503 (1943), considered the admissibility of expert testimony that was challenged because it "invaded the jury's province." *Id*. at 519. The court was not troubled by the fact that the expert testified regarding ultimate issues:

> No issue was withdrawn from the jury. The correctness or credibility of no materials underlying the expert's answers was even remotely foreclosed by the expert's testimony or withdrawn from proper independent determination by the jury. The judge's charge was so clear and correct that no objection was made, though, of course, there were exceptions to the refusal to grant the usual requests for charges that were either redundant or unduly particularized items of testimony. The worth of our jury system is constantly and properly extolled, but an argument such as that which we are rejecting tacitly assumes that juries are too stupid to see the drift of evidence. The jury in this case could not possibly have been misled into the notion that they must accept the calculations of the government expert any more than that they were bound by the calculations made by the defense's expert based on the defendants' assumptions of the case. So long as proper guidance by a trial court leaves the jury free to exercise its untrammeled judgment upon the worth and weight of testimony, and nothing is done to impair its freedom to bring in its verdict and not someone else's, we ought not be too finicky or fearful in allowing some discretion to trial judges in the conduct of a trial and in the appropriate submission of evidence within the general framework of familiar exclusionary rules.

*Johnson*, 319 U.S. at 519–20. Federal Rule of Evidence 704 (a) expressly states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." *Id*. The parallel Michigan Rule of Evidence is virtually identical. Mich. R. Evid. 704. Federal Rule of Evidence 704 was passed for the express purpose of abolishing case law that held witnesses could not express opinions on ultimate issues. Advisory Committee Notes, Fed. R. Evid. 704. In *United States v. Scheffer*, 523 U.S. 303 (1998), in a concurring opinion, Justice Kennedy quoted the Advisory Committee Notes to explain the change:

---

to evaluate the [witness's] testimony." *People v. Smith*, 425 Mich. 98, 109, 113, 387 N.W.2d 814 (1986).

*People v. Musser*, 835 N.W.2d 319, 327 (Mich. 2013) (footnote omitted).

> The older cases often contained strictures against allowing witnesses to express opinions upon ultimate issues, as a particular aspect of the rule against opinions. The rule was unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information. 7 Wigmore §§ 1920, 1921; McCormick § 12. The basis usually assigned for the rule, to prevent the witness from "usurping the province of the jury," is aptly characterized as "empty rhetoric." 7 Wigmore § 1920, p. 17.

*Scheffer*, 523 U.S. at 319.

Even if the Supreme Court concluded that the Federal Rules of Evidence did not allow expert testimony regarding witness credibility, that would not be sufficient to permit habeas relief. Where "the Supreme Court has addressed whether . . . testimony is permissible under the Federal Rules of Evidence . . . [but] it has not explicitly addressed the issue in constitutional terms . . . there is no Supreme Court precedent that the trial court's decision could be deemed 'contrary to,' under the AEDPA." *Bugh*, 329 F.3d at 513. For that reason, whether or not expert opinion testimony regarding witness credibility was properly admitted under state law, or even the Federal Rules of Evidence, Petitioner has failed to show that the court of appeals' determination of this issue is contrary to, or an unreasonable application of, clearly established federal constitutional law. Therefore, he is not entitled to habeas relief on this claim.

### B. Hearsay Testimony

Petitioner also contends that testimony offered by sexual assault nurse examiner Decatur and forensic interviewer Amy Minton recounting the victim's statements to them rendered Petitioner's trial fundamentally unfair because the testimony was inadmissible hearsay. The court of appeals concluded that the testimony of Decatur regarding the victim's out-of-court statements was not inadmissible hearsay because the victim made the statements for purposes of medical treatment or diagnosis. *Parks*, 2021 WL 3700115, at *3–4. That determination—that the testimony was properly admitted under state law—binds this Court. *Wainwright*, 464 U.S. at 84; *Bradshaw*, 546 U.S. at 76.

13

It is possible that an evidentiary ruling—even a ruling that is axiomatically correct under state law—still violates due process. As explained above, state-court evidentiary rulings can rise to the level of due process violations if they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour*, 224 F.3d at 552; *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh*, 329 F.3d at 512. And, as explained above, under the AEDPA, this Court may not grant relief if it would have decided the evidentiary question differently. The Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders*, 221 F.3d at 860. Once again, Petitioner has not met this difficult standard; he does not even cite any Supreme Court authority in support of this habeas challenge.

There is nothing inherent in the admission of hearsay testimony generally that offends fundamental principles of justice. In fact,

> [t]he first and most conspicuous failing in [arguing that hearsay testimony violates due process] is the absence of a Supreme Court holding granting relief on [that] theory: that admission of allegedly unreliable hearsay testimony violates the Due Process Clause. That by itself makes it difficult to conclude that the state of appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

*Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013) (quoting 28 U.S.C. § 2254(d)). Here, as in *Desai*, the court of appeals held that the evidence "fell within an established hearsay exception," in this case, the medical treatment exception pursuant to Michigan Rule of Evidence 803(4). *Id*. at 631. "Where, as here, a state court reasonably rejects a rule urged by the claimant but yet to be adopted by the Supreme Court, it does not unreasonably apply established federal law." *Id*. at 632 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

14

While hearsay itself is not constitutionally impermissible, in some instances, testimony regarding out-of-court statements might raise the specter of a violation of the Confrontation Clause. The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). Here, however, the victim testified at Petitioner's trial,[4] and Petitioner, through counsel, had the opportunity to cross-examine the victim. Thus, any Confrontation Clause issue buried within Petitioner's objection to hearsay testimony necessarily fails.

Although the appellate court concluded that Minton's testimony regarding the victim's out-of-court statements was inadmissible hearsay, it did not grant relief. The court of appeals concluded that any error did not affect Petitioner's substantial rights because:

> [t]he victim testified at trial regarding her allegations against defendant, and both the victim's mother and Decatur properly testified regarding the victim's allegation that defendant sexually abused her, which means that Minton's testimony was cumulative. See *People v Rodriguez*, 251 Mich App 10, 29; 650 NW2d 96 (2002) (stating that "[a]ny error would not have been outcome determinative given other similar testimony and the nature of the evidence against" the defendant). In light of other persuasive and properly admitted evidence, reversal is not required.

*Parks*, 2021 WL 3700115, at *8.

---

[4] *See Parks*, 2021 WL 3700115, at *1 (stating "***At trial, the prosecution presented testimony from the victim***, her mother, Officer Niesen, Decatur, and Minton. KP, defendant's biological son, and KP's brother, CR, also testified at trial because they temporarily lived with defendant and saw the victim regularly coming out of defendant's bedroom when they arrived home from school.") (emphasis added).

This Court must still determine whether the court of appeals' denial of relief was contrary to, or an unreasonable application of, clearly established federal law. And, Petitioner remains stymied by the absence of any clearly established federal law holding that the admission of hearsay evidence violates due process. Therefore, despite the improper admission of hearsay testimony, Petitioner is not entitled to habeas relief.

### C.    "Other acts" Evidence

Petitioner also attacks the admission of "other acts" evidence. The prosecutor offered evidence "regarding several alleged incidents of sexual abuse that occurred between defendant and his stepdaughter . . . and two alleged incidents of sexual abuse that occurred between defendant and his biological daughter . . . ." (Pet'r's Br., ECF No. 2, PageID.24.) Petitioner contends that admission of this evidence violated state law and, therefore, violated his due process rights. (*Id.*, PageID.39–40.)

Resolution of this claim follows the same analytical path as the two claims considered above. First, the court of appeals concluded that the "other acts" evidence was properly admitted under state law. *Parks*, 2021 WL 3700115, at *9–10. That determination binds this Court. Second, whether properly admitted or not, Petitioner has failed to show the state court's rejection of Petitioner's challenge regarding the admission of "other acts" evidence is contrary to, or an unreasonable application of, clearly established federal law. There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of "other acts" evidence.

Petitioner cites *Estelle* to support his claim, but in *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to

16

show propensity to commit a charged crime. *Id*. at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.

Accordingly, Petitioner has failed to show that the Michigan Court of Appeals' rejection of his "other acts" claim is contrary to, or an unreasonable application of, clearly established federal law. He is not entitled to habeas relief on the "other acts" claim.

### D.      Ineffective Assistance of Counsel

Petitioner contends that his counsel was ineffective for failing to object to the admission of the expert opinions regarding credibility and the hearsay testimony. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.

A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the

17

wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. Although the Michigan Court of Appeals relied on state authority as the source of the relevant standard, the standard applied was functionally equivalent to the standard set forth in *Strickland*. *Parks*, 2021 WL 3700115, at *5 (stating that defendant "must 'show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced' him.").[5]

> ### 1.   Ineffective assistance for failing to object to Decatur's opinion testimony regarding credibility and her testimony regarding the victim's out of court statements

The court of appeals determined that Petitioner's counsel had not rendered ineffective assistance for failing to object to Decatur's testimony because both of the objections urged by Petitioner were meritless. The appellate court stated that "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Id.* (quoting *People v. Ericksen*, 793 N.W.2d 120, 125 (Mich. Ct. App. 2010) (internal quotation marks omitted).

When a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the

---

[5] The court of appeals cited *People v. Randolph*, 917 N.W.2d 249 (Mich. 2018). The *Randolph* decision, in turn, relied on *Strickland* as the source of its statement of the standard. *Id.* at 252.

difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

In this instance, however, Petitioner's claim fails whether there is one layer of deference or two. The determinations that the objections would have been meritless or futile are axiomatically correct because they are state law determinations that bind this Court. And, "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Accordingly, Petitioner has failed to show that the court of appeals' rejection of this claim is contrary to, or an unreasonable application of, *Strickland*.

### 2. Ineffective assistance for failing to object to Cottrell's testimony

With regard to all of Cottrell's testimony that the court of appeals determined was properly admitted, counsel's objection to that testimony would have been meritless and futile; therefore, failing to object could not be ineffective assistance. With respect to the improperly admitted testimony, the objections would not necessarily have been futile, but the court of appeals rejected the claim for a different reason:

> Defendant also argues that he was denied effective assistance because his defense counsel failed to object to Cottrell's improper testimony. We disagree because the record does not support this contention.
>
> At a motion hearing, defense counsel initially objected to Cottrell's giving testimony, challenging the late notice of Cottrell as a witness, as well as the reliability of the data on which Cottrell relied. On the first day of the jury trial, before the trial started, defense counsel raised concerns that Cottrell's testimony would improperly bolster the victim's credibility. Additionally, during trial, defense counsel repeatedly objected to Cottrell's testimony on the ground that he was improperly bolstering the victim's credibility. Therefore, the record does not support defendant's contention of ineffective assistance with respect to Cottrell.

*Parks*, 2021 WL 3700115, at *8.

"The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016)

(footnote omitted). Petitioner could rebut that presumption by clear and convincing evidence. Here, Petitioner does not even challenge the appellate court's findings regarding counsel's actions; Petitioner simply ignores the court's factual determinations. Therefore, the Court presumes that counsel made the objections as described by the court of appeals and Petitioner's ineffective assistance claim relating to Cottrell's testimony is unsupported by the record.

### 3. Ineffective assistance for failing to object to Minton's testimony

The court of appeals offered two reasons that the failure to object to Minton's testimony is not properly considered ineffective assistance. First, the appellate court posited that the failure to object was likely trial strategy:

> Instead of objecting when Minton relayed the victim's statements, defense counsel undertook to discredit the victim's statements during the second interview by emphasizing the difference between her first admissions to Minton and her second admissions. Defense counsel also had Minton explain to the jury that her job was not to determine whether the victim was truthful. Additionally, counsel attempted to discredit how Minton performed the forensic interviews and had her admit that the credibility of the victim's statements depended on how well the forensic interview was conducted. The record indicates that defense counsel's attempt to use Minton's hearsay statements to help defendant's case was unsuccessful, but we will not "use the benefit of hindsight when assessing counsel's competence." *Unger*, 278 Mich App at 242-243.

*Parks*, 2021 WL 3700115, at *8. But, ultimately, the court of appeals resolved the claim on the second *Strickland* prong:

> Even assuming that defense counsel's performance was objectively deficient, defendant has failed to establish that "but for counsel's deficient performance, a different result would have been reasonably probable" because of the significant amount of evidence admitted against defendant at trial. *Armstrong*, 490 Mich at 290. As noted, the victim, Decatur, and the victim's mother all properly testified at trial regarding the victim's allegations against defendant. Decatur also testified regarding a physical injury to the victim's genital area, which could be consistent with sexual abuse. Officer Niesen testified regarding the inculpatory statements defendant made to him. Additionally, although KP and CR were not eyewitnesses to the sexual abuse, their testimony added corroborative support to the victim's statements that defendant sexually abused her in his bedroom after school. Furthermore, the prosecution properly admitted other-acts evidence against

defendant to show he had the propensity to commit sexual abuse against children. Therefore, defendant was not denied the effective assistance of counsel.

*Id*. at *9.

Petitioner does not address the court of appeals' determination that he suffered no prejudice because the evidence admitted was cumulative. He simply claims the evidence was prejudicial. (Pet'r's Br., ECF No. 2, PageID.38.) He never refutes the appellate court's conclusion that the evidence was cumulative and then never addresses how prejudice accrued where the same evidence came in properly so many other ways. He essentially ignores the court of appeals' resolution and just repeats the arguments he raised in the Michigan appellate courts.

The *Strickland* Court recognized that the impact of an attorney's deficient performance that changes the evidence admitted might have an impact that is significant or trivial:

> [A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695–96. The Sixth Circuit Court of Appeals has routinely concluded that evidence admitted or excluded because of counsel's deficient performance that is cumulative of other evidence before the court precludes a finding that the failure to object was prejudicial. *See, e.g., Wesson v. Shoop*, 847 F. App'x 325, 329 (6th Cir. 2021); *Barnes v. Warden, Ross Corr. Inst*., No. 19-3389, 2019 WL 5576345, at *2 (6th Cir. Sept. 16, 2019); *Hawkins v. Warden, Ross Corr. Inst*., No. 16-4346, 2017 WL 5989029, at 82 (6th Cir. May 18, 2017); *Allen v. Howes*, 438 F. App'x 432, 435 (6th Cir. 2011); *Landrum v. Mitchell*, 625 F.3d 905, 929–30 (6th Cir. 2010); *Bueke*

*v. Houk*, 537 F.3d 618, 644–45 (6th Cir. 2008); *Hartman v. Bagley*, 492 F.3d 347, 361 (6th Cir. 2007); *Bridges v. Cason*, 198 F. App'x 491, 495 (6th Cir. 2006).

Accordingly, Petitioner has failed to demonstrate that the court of appeals' rejection of his ineffective assistance claim relating to the admission of Minton's testimony is contrary to, or an unreasonable application of, *Strickland*. He is not entitled to habeas relief.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate

of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>Conclusion</u>

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   __October 17, 2022__                    __/s/ Paul L. Maloney_____
                                                                 Paul L. Maloney
                                                                 United States District Judge